### In re CHANNEL ONE COMMUNICATIONS, INC., Debtor.

**Bankruptcy No. 90–41722–172.**

United States Bankruptcy Court, E.D. Missouri, E.D.

March 21, 1991.

See also 125 B.R. 234.

David A. Warfield, St. Louis, Mo., for debtor.

Vincent D. Vogler, St. Louis, Mo., for creditors' committee.

Raymond J. Mengler, Chicago, Ill., for Freeman, Freeman & Salzman, P.C.

## FINDINGS OF FACT

JAMES J. BARTA, Bankruptcy Judge.

This matter was presented to the Court upon the request of Freeman, Freeman & Salzman, P.C. ("FF & S") styled "Motion to Reform Ballot Accepting Reorganization Plan and Revoke Election to Treat Class 3 Unsecured Claim As A Class 2 Administrative Claim". Counsel for FF & S, Counsel for the Debtor, and Counsel for the Official Unsecured Creditors' Committee appeared at the hearing on February 19, 1991, and presented certain arguments upon the record. Upon consideration of the record as a whole, the Court announced its determinations and orders from the bench.

The Debtor had owned and operated KSTZ, an FM radio station broadcasting in the Greater St. Louis Metropolitan area. On April 12, 1990, the Debtor filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code.

On August 11, 1990, the Court entered an Order under Section 363 of the Bankruptcy Code authorizing the Debtor to sell substantially all of its assets. 117 B.R. 493. On December 31, 1990, the sale was

closed and the Debtor received more than $3,000,000 in cash and a promissory note for $500,000.

On January 4, 1991, the Court entered an Order confirming the Debtor's Chapter 11 Plan. The Plan is a liquidating plan whereby all of the Debtor's assets are to be distributed to its creditors in accordance with the priorities set forth in the Bankruptcy Code. The confirmed liquidating plan created a class of creditors (Class 2) holding claims of $500 or less and all creditors holding claims in excess of $500 who chose to voluntarily reduce their claims to $500. All Class 2 creditors received payment in the full amount of their claims, or $500 whichever was less, on the effective date of the plan. All secured, administrative, and priority claimants were also paid in cash the full amount of their allowed claims as provided in the plan from the proceeds of this sale.

The plan anticipates, and it now appears almost certain that the separate class of general unsecured creditors will receive less than full payment of their claims. The payment of certain other claims and interests has been subordinated either by the terms of the confirmed plan or as a result of Court orders. Certain penalty claims and equity holder claims will receive nothing under the plan.

Approximately two weeks prior to entry of the order of confirmation, the Debtor and the Unsecured Creditors' Committee filed numerous objections to claims and interests. Most of these objections were resolved after confirmation of the plan by agreement among the claimant, the Debtor and the Creditors' Committee.

In its Chapter 11 Schedules, the Debtor listed the general unsecured claim of FF & S as "disputed", indicating that the amount owed was $62,766.88. The total amount of unsecured debt listed in the Debtor's schedules was $1.6 million. FF & S timely filed a proof of claim as the holder of an unsecured claim in the amount of $65,541.35.

FF & S also timely returned its ballot accepting the liquidating plan of reorganization. In doing so, FF & S circled the election "yes" on the form, indicating that it wished to reduce its claim voluntarily to $500 and that it wished to participate as a Class 2 creditor under the plan. In support of the motion being considered here, FF & S has argued that this election was made erroneously.

After FF & S returned its ballot opting into Class 2, the Debtor and the Official Unsecured Creditors' Committee engaged in discussions and reached settlements with a number of creditors, including Landmark Bank, The Sterling Group, Harris Corporation, and Drury Displays, Inc. These discussions and the resulting settlements assumed a universe of claims and a projected dividend based upon FF & S's voluntary reduction of its claim to $500.

On or about the effective date of the Plan, the Debtor sent to FF & S a check in the amount of $500, representing payment in full of FF & S's claim under Class 2.

After receiving the $500 check, FF & S filed its Motion to Reform Ballot Accepting Reorganization Plan and Revoke Election to Treat Class 3 Unsecured Claim As a Class 2 Administrative Claim.

Counsel for the Creditors' Committee argued against the FF & S Motion, stating that several hundred hours had been devoted to the settlement of claims based on the ballots received from creditors, including that filed by FF & S, and the amount of proceeds expected to be available from the sale.

On February 15, 1991, the Debtor filed a written report pursuant to Bankruptcy Rule 2015(a)(6) indicating that the Initial Distribution under the plan had been accomplished.

## CONCLUSIONS OF LAW

This is a core proceeding pursuant to Section 157(b)(2)(A) and (O).

The Debtor, the Official Creditors' Committee and various other creditors each relied upon FF & S's voluntary election to reduce its claim to $500 and participate as a Class 2 Creditor in their settlement discussions. This reliance was not unreasonable, as FF & S on its ballot clearly elected to voluntarily reduce its claim to $500.

In the facts and circumstances presented in this case, including the reliance mentioned above, the Court should not exercise its general equitable powers to grant the relief sought by this Movant. Therefore,

IT IS ORDERED that this hearing is concluded; and that the Movant's request to revoke its election and be treated as a Class 3 Administrative Claimant and for other relief is DENIED; and that the ballot filed by FF & S in this matter shall stand as originally submitted.